UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM J. BAUMER,<br><br>　　　　　　　　　　　Petitioner,<br><br>　　v.<br><br>JAMES TILTON, Warden,<br><br>　　　　　　　　　　　Respondent. | Civil No.　06cv1361 JM (CAB)<br><br>**REPORT AND RECOMMENDATION REGARDING FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS AND REQUEST FOR EVIDENTIARY HEARING**<br>**[Doc. Nos. 31, 33.]** |

## I. INTRODUCTION

WILLIAM J. BAUMER, a state prisoner proceeding *pro se*, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging his San Diego Superior Court conviction in case number SF 141219 for possession and manufacture of a weapon by a prisoner and two charges of battery by a prisoner arising from his assaults on a correctional officer. He contends his federal constitutional rights were violated as follows: (1) the state trial court violated his right to due process under the Fifth and Fourteenth Amendments when it ordered him to wear restraints during his trial; and (2) the trial court violated his Sixth and Fourteenth Amendment rights by denying his request, pursuant to *Faretta v. California*, 422 U.S. 806 (1975), to represent himself at trial. Petitioner also requests this Court hold an evidentiary hearing on his *Faretta* claim.

The Court has considered the Petition, Respondent's Answer, Petitioner's Traverse, Petitioner's Request for an Evidentiary Hearing, and all the supporting documents submitted by the parties. Based

upon the documents and evidence presented in this case, and for the reasons set forth below, this Court recommends both the Petition and the Request for an Evidentiary Hearing be **DENIED**.

## II. FACTUAL BACKGROUND

This Court gives deference to state court findings of fact and presumes them to be correct; Petitioner may rebut the presumption of correctness, but only by clear and convicting evidence. 28 U.S.C. § 2254(e)(1); *see also Parke v. Raley*, 506 U.S. 20, 35-36 (1992) (holding findings of historical fact, including inferences properly drawn from such facts, are entitled to statutory presumption of correctness). The facts as found by the state appellate court are as follows:

*Counts 1 and 2, Battery by Prisoner (Jury Guilty Verdicts)*

Baumer was housed in the prison's administrative segregation unit where heightened security procedures are utilized. The cell doors have locked "tray slot" openings that are used to serve food and to attach and remove an inmate's handcuffs. To remove an inmate from his cell, the correctional officer unlocks the tray slot; the inmate places his hands behind his back and out the tray slot; the officer handcuffs the inmate; the inmate pulls his cuffed hands back into the cell; and then the cell door is opened by an officer in a control booth. The same type of procedure is used to remove the inmate's handcuffs when he is placed back in his cell. Officers wear padded protective vests.

On June 8, 1999, Officer David Rivas escorted Baumer from the library cage back to his cell. Baumer entered his cell and placed his hands through the tray slot for removal of the handcuffs. After Officer Rivas removed the handcuff from one hand, Baumer pulled his hands back through the tray slot. Officer Rivas tried to hold onto the key and the handcuffs and was pinned against the cell door as Baumer pulled away. Officer Rivas released the handcuffs and Baumer refused to return them. Officer Rivas suffered an abrasion to his finger from the altercation.

Officer Rivas reported the incident to his supervisor, Sergeant Richard Holmes. Sergeant Holmes was unsuccessful in convincing Baumer to return the handcuffs. About 20 to 30 minutes later, Baumer returned the handcuffs to Lieutenant William Humphrey.

On June 11, 1999, when Officer Rivas was escorting Baumer to the shower, Baumer threatened to assault him even with handcuffs on. When Officer Rivas placed Baumer in the shower stall and closed the grill gate, Baumer spat on Officer Rivas's face. Baumer's spit hit Officer Rivas under his chin, on his right cheek, and on his protective vest.

*Count 5, Possession Of Weapon, February 1999 (Jury Deadlock)*

On February 6, 1999, Officer Rivas found an inmate-manufactured weapon in Baumer's cell inside an opening in the middle of his mattress. The weapon was made of plastic that had been molded into a sharp point and was seven and one-half inches long and one inch wide.

Witnesses for the defense testified that mattresses were not always searched when inmates or mattresses were moved between cells.

///

*Counts 3 and 4, Possession and Manufacture of Weapon, April 1999 (Guilty Pleas)*

Baumter stipulated that the testimony at the preliminary hearing formed the factual basis for his guilty pleas. According to that evidence, on April 3, 1999, Officer Kenneth Walls observed Baumer in his cell heating a black object and molding it into a sharp, pointed form. On April 4, 1999, Officer Michael Krysinski, assisted by Sergeant William Schembri, found an inmate-manufactured weapon in a hand lotion bottle in Baumer's cell.

(Lodgment No. 6 at 1-4.)

### III.  PROCEDURAL BACKGROUND

On August 22, 2000, in an amended complaint that was subsequently deemed an information, Petitioner was charged with two counts of battery by a state prisoner in violation of California Penal Code § 4501.5, two counts of possession of a deadly weapon by a prisoner in state prison in violation of California Penal Code § 4502(a), and one count of manufacture of a deadly weapon by a state prisoner in violation of California Penal Code § 4502(b). (Clerk's Transcript, Vol. 4 at 974-75.) The amended complaint also alleged two prior convictions under California's "Three Strikes" Law, California Penal Code § 667(b)-(i), and three prior prison term convictions under California Penal Code § 667.5(b). (*Id*. at 975-77.)

On March 17, 2000, the trial court granted Petitioner's request for advisory counsel and appointed attorney William Burgener to assist Petitioner, who was representing himself. (CT, Vol. 8 at 1702.) On May 9, 2000, the trial court ordered Petitioner to wear restraints during the trial. (*Id*. at 1727.) The trial court also granted Petitioner's request to terminate his pro per status and appointed attorney William Burgener to represent him. (*Id*. at 1728.)

On August 14, 2000, the trial court denied Petitioner's motion to sever counts three and four. (*Id*. at 1744.) Subsequently, on August 28, 2000, Petitioner changed his plea and plead guilty to counts three and four, possession of a deadly weapon by a state prisoner and manufacture of a deadly weapon by a state prisoner. (*Id*. at 1759.)

A bifurcated jury trial on the remaining counts commenced on August 31, 2000. (*Id*. at 1764.) On September 19, 2000, a San Diego County Superior Court jury found Petitioner guilty of two counts of battery by a state prisoner and was unable to reach a verdict on the remaining count of possession of a deadly weapon by a state prisoner. (*Id*. at 1805-06, 1810-12.) A mistrial was declared as to the remaining count of possession of a deadly weapon by a state prisoner and it was dismissed without

prejudice on motion by the prosecution. (*Id*. at 1815, 1821.) On September 21, 2000, the jury returned true findings on all prior conviction allegations. (*Id*. at 1854-55.)

On October 13, 2000, the trial court granted Petitioner's request to represent himself again and relieved attorney Burgener as attorney of record and as advisory counsel to Petitioner. (*Id*. at 1833.)

The trial court held a sentencing hearing on January 3, 2001. (*Id*. at 1852-54.) At the hearing, the trial court denied Petitioner's motion to withdraw his plea of guilty as to counts three and four, (*id*. at 1853), and sentenced Petitioner to state prison for a term of seventy-eight years to life, (*id*. at 1854-55).

Petitioner appealed his conviction and sentence, arguing the trial court erred in: (1) requiring him to wear restraints during trial; (2) denying his motion to reinstate his self-representation status; (3) denying his motion to withdraw his guilty pleas to counts three and four; and (4) denying his motion for discovery of officer personnel records. (Lodgment No. 3.)  On October 21, 2003, the California Court of Appeal, Fourth Appellate District, Division One, affirmed the judgment as to the first three claims and reversed the judgment as to the fourth claim for the limited purpose of having the trial court conduct an in camera review of the records.[1] (Lodgment No. 6 at 1-2.)

On December 2, 2003, Petitioner filed a petition for review with the California Supreme Court, raising the same arguments concerning the requirement that he wear restraints, the denial of his motion to reinstate self-representation, and the denial of his motion to withdraw his guilty pleas. (Lodgment No. 7.) The California Supreme Court summarily denied the petition on January 14, 2004. (Lodgment No. 8.)

On November 8, 2007, Petitioner filed his First Amended Petition for Writ of Habeas Corpus in this Court. [Doc. No. 31.] On November 16, 2007, Respondent filed its notice of intent to rely on its previous Answer. [Doc. No. 32.] Petitioner filed a Request for an Evidentiary Hearing on December 10, 2007, [Doc. No. 33], and his Traverse on December 11, 2007, [Doc. No. 35].

## IV. DISCUSSION

Petitioner contends his federal constitutional rights were violated as follows: (1) the trial court violated his due process rights under the Fifth and Fourteenth Amendments when it ordered him to wear

---

[1] After the in camera review, Petitioner filed a second appeal, which was denied on June 13, 2005, when the California Court of Appeal affirmed the judgment in its entirety. (Lodgment No. 9.) Petitioner did not pursue any further action on this issue.

restraints during his trial; and (2) the trial court violated his Sixth and Fourteenth Amendment rights by denying his request, pursuant to *Faretta v. California*, 422 U.S. at 806, to represent himself at trial. Petitioner also requests this Court hold an evidentiary hearing on his *Faretta* claim.

Respondent argues the Petition should be denied because both claims were reasonably rejected by the California Court of Appeal within the meaning of 28 U.S.C. § 2254(d).

**A.      Standard of Review**

Title 28, United States Code, § 2254(a), sets forth the following scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in <u>violation of the Constitution or laws or treaties of the United States.</u>

28 U.S.C. § 2254(a) (emphasis added).

The current Petition is governed by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320 (1997). As amended, 28 U.S.C. § 2254(d) reads:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was <u>adjudicated on the merits</u> in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2) (emphasis added).

To obtain federal habeas relief, Petitioner must satisfy either § 2254(d)(1) or § 2254(d)(2). *See Williams v. Taylor*, 529 U.S. 362, 403 (2000). The Supreme Court interprets § 2254(d)(1) as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams*, 529 U.S. at 412-13; *see also Lockyer v. Andrade*, 538 U.S. 63, 73-74 (2003).

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision. *Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991). If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds by *Lockyer*, 538 U.S. at 75-76); *accord Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). However, a state court need not cite Supreme Court precedent when resolving a habeas corpus claim. *Early v. Packer*, 537 U.S. 3, 8 (2002). "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent]," *id.*, the state court decision will not be "contrary to" clearly established federal law. *Id.*

**B.     Claim One**

Petitioner claims the trial court violated his due process rights under the Fifth and Fourteenth Amendments when it ordered him to wear restraints during his trial. He argues there was no manifest need for him to wear physical restraints and that wearing restraints would "impinge on the presumption of innocence." (Petition, Attachment A at 2.) Respondent argues Petitioner's due process rights were not violated and thus his claim was reasonably rejected by the California Court of Appeal within the meaning of 28 U.S.C. § 2254(d).

In a reasoned analysis, the California Court of Appeal rejected Petitioner's claim as follows:

[Background]

> Prior to trial Baumer was granted self-representation status and advisory counsel was appointed to assist him. Trial was set to commence on May 8, 2000. On [May 8, 2000], Baumer filed a motion to be free of physical restraints at trial. At a hearing on [May 9, 2000], the prosecution, the California Department of Corrections, and the sheriff's department opposed the motion because of Baumer's current and past violent conduct. They pointed to the fact that Baumer was in prison for the violent crime of robbery and had another past conviction for robbery; he was currently charged with assaultive conduct against a correctional officer and possession of weapons in prison; and he was found with weapons in county jail. Further, he had committed other acts of violence while in prison, including a battery on staff and an inmate in 1998, and was housed in administrative segregaion because he was a high security risk. Additionally, in 1995 during a trial where he was ultimately found not guilty of murder, he had several outbursts and was ordered restrained; he threatened his attorney; and he engaged in an altercation with an inmate in the holding tank that required the inmate to be hospitalized. According to the Department of Corrections, Baumer had refused to relinquish his handcuffs on two occasions after court appearances and had told correctional staff that if he was convicted in the instant case, "it's on."

Baumer denied he made any threats to the correctional officers or withheld handcuffs in relation to court appearances. [The state appellate court noted Baumer acknowledged he did refuse to turn over handcuffs when he believed correctional officers were infringing on his rights in prison.] Baumer argued he should not be restrained because the behavior problems attributed to him were in the past; he had not been involved in any altercations in prison for the entire past year; and during a recent federal trial, as well as the current proceedings, he had demonstrated his ability and intention to act properly in the courtroom. He explained that in February he had conducted a week-long jury trial in federal court involving his civil rights claims against law enforcement officers, and during that trial had acted professionally and without restraints. [However, the appellate court noted that in a July federal trial, Baumer was restrained.] He also pointed out that his problems during the murder trial had occurred six years earlier. Noting that he was representing himself, Baumer argued it was important that he be able to present himself to the jury as a normal human being, not a violent prisoner.

Recognizing that it had to balance court security with the right to a fair trial, the trial court ruled that Baumer could wear civilian rather than prison clothing, but had to wear physical restraints. The trial court acknowledge that Baumer had never acted up in the courtroom in the instant case, but found the need for security was nevertheless shown by his behavior during the 1995 murder trial. The court observed that the federal civil trial where he was the plaintiff was very different from the instant criminal matter which placed him at risk for a lengthy additional prison term. To prevent the jury from noticing that Baumer was restrained with leg chains, the court ordered that skirts be placed around both the prosecution and defense tables; that both the prosecutor and the defendant remain at the tables during trial; and that the bailiff handle such matters as showing exhibits to the witnesses.

(Lodgment No. 6 at 4-6.)

[Analysis]

A defendant cannot be required to wear physical restraints during trial unless there is a manifest need for such restraints. (*People v. Mar* (2002) 28 Cal.4th 1201, 1216.) Manifest need may arise from a showing of violence, threat of violence, or other nonconforming conduct. (*Id*. at 1217.) It is not proper for a court to adopt a general policy of imposing restraints upon prison inmates charged with new offenses, and the fact that a defendant is a prison inmate charged with a violent crime does not, without more, justify the use of physical restraints. (*Id*. at p. 1218.) Rather, the court must make the decision whether to use physical restraints on a case-by-case basis. (*Ibid*.)

Although no formal hearing is required, the trial court must make its determination based on facts, not rumor and innuendo. (*People v. Mar*, *supra*, 28 Cal.4th at p. 1218.) We review a court's determination that restraints are necessary under the abuse of discretion standard. (*Id*. at p. 1217.)

Baumer argues there was no showing of a manifest need to restrain him. He also asserts that the trial court's decision was motivated, at least in part, by a routine policy requiring prison inmates to be restrained. We disagree. Although the prosecutor informed the court about procedures typically used to restrain prison inmates at trial, there is no suggestion that the trial court decided to restrain Baumer because of a blanket restraint policy without regard to his particular situation. To the contrary, the record shows that the court engaged in a careful evaluation based on information provided by both law enforcement and the defense.

There is sufficient evidence in the record to support the trial court's discretionary decision that there was a manifest need for restraints. In addition to the violence associated with his prior robbery convictions, Baumer engaged in assaultive behavior and possessed

weapons while he was in prison and jail. Thus, he continued to show a tendency towards violence or the threat of violence even while incarcerated. Further, the trial court was provided with specific information that he had to be restrained in a previous criminal case due to disruptive conduct and that he may have threatened correctional officers in conjunction with the instant case. The prior criminal trial where Baumer was disruptive is analogous to the instant criminal trial because, unlike a civil trial, it carried the consequence of loss of liberty. Thus, the court could reasonably give greater weight to his conduct during the criminal trial than during the civil trial. It was not unreasonable for the trial court to conclude that even though Baumer's behavior had so far been appropriate in the current courtroom, there was a substantial possibility that he might act in a violent or nonconforming manner if matters did not unfold to his liking, and thus restraints were necessary.

(Lodgment No. 6 at 8-10.)

A "defendant has the right to be free from shackles and handcuffs in the presence of the jury, unless shackling is justified by an essential state interest." *Ghent v. Woodford*, 279 F.3d 1121, 1132 (9th Cir. 2002); *see also Rhoden v. Rowland*, 172 F.3d 633, 636 (9th Cir. 1999); *Holbrook v. Flynn*, 475 U.S. 560, 568-69 (1986); *Illinois v. Allen*, 397 U.S. 337 (1970). In order for a defendant who was shackled during trial to prevail on a claim that his due process rights were violated, "a court must find that the defendant was indeed physically restrained in the presence of the jury, that the shackling was seen by the jury, and that the physical restraint was not justified by state interests." *Ghent*, 279 F.3d at 1132.

Here, there is no evidence in the record, other than speculation by Petitioner, that the jury ever saw the leg chains on Petitioner. The trial court ordered skirts to be placed around both the prosecution and defense tables in order to prevent the jury from noticing Petitioner was restrained. (8 RT at 1151.) The trial court also ordered both the prosecutor and the defendant to remain at the tables during trial and that the bailiff handle such matters as showing exhibits to the witnesses. (*Id*.) Furthermore, to address Petitioner's concerns that the jury could hear the chains rattling, the trial court ordered the chains to be taped. (12 RT at 1932.) As a result, Petitioner's claim fails because there is no evidence the jury ever saw his leg chains.[2] However, assuming *arguendo* the jury did observe the leg chains, Petitioner's claim still fails because the trial court's decision was justified by state interests specific to his case.

In *Deck v. Missouri*, 544 U.S. 622, 629 (2005), the United States Supreme Court held that "the Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a

---

[2] The trial court nevertheless instructed the jury that increased court security carries no connotation of guilt of any kind and that any increased security measures should have no bearing on the determination of guilt or innocence. (26 RT at 4372-73.)

particular trial." In reaching this conclusion, the Court recognized the need to restrain dangerous defendants to prevent courtroom attacks as well as the need to give trial courts broad discretion to make individualized security determinations. *Id*. at 633. However, in light of the prejudicial effect of visible restraints, "due process does not permit the use of visible restraints if the trial court has not taken account of the circumstances of the particular case." *Id*. at 632.

The Court granted relief to the defendant in *Deck* because the evidence in the record demonstrated that: (1) the jurors were aware of the defendant's restraints; (2) the trial court did not make any formal or informal findings justifying the restraints such as a risk of escape or a threat to courtroom security, or explaining why the chosen restraints were necessary; and (3) the shackling of the defendant was "inherently prejudicial," so that it could not be upheld without adequate justification. *Id*. at 633-635.

In the instant case, Petitioner wore leg chains throughout the trial, except during his testimony when he requested that he wear a stun belt. (Lodgment No. 6 at 8.) The trial court based its decision to shackle Petitioner on security concerns derived from his criminal background and current charges, his history of disorderly incidents in the courtroom, his history of possessing weapons while in custody, his classification by prison officials as a high security risk, and the representations from all the parties, including the allegations that Petitioner made specific threats Petitioner in relation to the case at trial. (*See generally* 8 RT at 1085, 1089, 1091-93, 1095-97, 1102.) Furthermore, the trial court offered Petitioner an alternative to shackling, in the form of a stun belt that would be concealed under his jacket, which Petitioner rejected. (*Id*. at 1150-51, 1157-58.)

As these facts demonstrate, the trial court examined the circumstances regarding the necessity of Petitioner's restraints. In conducting a case specific inquiry, the trial court balanced the competing interests and determined that Petitioner presented a threat to court security sufficient to justify shackling. (8 RT at 1151.) Accordingly, because the trial court exercised its discretion reasonably in light of the circumstances of the particular case, the state appellate court's ruling on the claim was neither contrary

///

///

///

to nor involved an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts. Therefore, this Court recommends Petitioner's claim be **DENIED**.

**C.   Claim Two**

Petitioner's second claim contends that the trial court violated his Sixth and Fourteenth Amendment rights by denying his request, pursuant to *Faretta v. California*, 422 U.S. at 806, to represent himself at trial. Petitioner claims he did not make the motion for purposes of delaying the trial, but because he sincerely believed his appointed counsel was ineffective. (Petition at 14-15.) Respondent argues Petitioner's rights were not violated and thus his claim was reasonably rejected by the California Court of Appeal within the meaning of 28 U.S.C. § 2254(d).

In a reasoned opinion, the California Court of Appeal rejected Petitioner's claim as follows:

[Background]

> After the trial court's ruling requiring restraints, Baumer concluded that he could not effectively represent himself in chains and accordingly requested that counsel be appointed to represent him. The court denied the motion, reminding Baumer he had previously been admonished that if he did not want to represent himself he could not wait until the eve of trial to request counsel. [The appellate court inserted a footnote observing that lengthy hearings had been held in April in response to Petitioner's claims he was not being provided adequate resources or time to prepare for trial and that during these hearings the trial court told Petitioner if he wanted counsel to represent him he needed to make the request by April 24, 2000, to give counsel time to prepare for trial.] in response, Baumer argued that at that time he was not told he would be "chained like an animal" in front of the jury. Ignoring the trial court's denial of his motion for appointed counsel, Baumer refused to respond to the trial court's queries concerning his additional in limine motions, but instead reiterated that he wanted counsel because he could not represent himself in chains.

> Thereafter, the court advised Baumer that if an attorney was appointed to represent him, any subsequent request for self-representation would be viewed as manipulative and would be denied. Explaining its reasoning, the court referred to another instance of manipulative conduct. On that occasion Baumer had requested to switch from self-representation to appointed counsel when he had not obtained a favorable ruling. The court regarded Baumer's conduct as manipulative and designed to delay the proceedings and pressure the court. Because it appeared Baumer would not voluntarily represent himself and cooperate in the proceedings, the court appointed counsel to represent him. Thereafter, the trial date was reset several times, from [July 5, 2000], to [August 2, 2000], to [August 21, 2000].

> Baumer made repeated unsuccessful [*People v. Marsden*, 2 Cal.3d 118 (1970)] motions in July, August, and September. During pretrial hearings on [August 21, 22, and 23 2000], Baumer made several [*Faretta*, 422 U.S. at 806] motions to represent himself, stating he would not seek a continuance of the trial date. The trial court denied the self-representation motions. In the court's view, Baumer was using the requests to manipulate the court and delay the proceedings. The court pointed to his obstructive conduct during the [May 9, 2000] hearing when he was dissatisfied with the ruling requiring restraints and had

refused to cooperate with the proceedings. The court opined that even though he was not currently asking for a continuance, based on past behavior the court was satisfied that if he was allowed to represent himself he would again try to delay the proceedings and pressure the court to give him favorable rulings.

(Lodgment No. 6 at 6-8.)

[Analysis]

[Appellate court's discussion of case authority omitted]

      Baumer asserts that the trial court erred in denying his request for self-representation because he made the request before the start of trial; he expressly told the court he did not want a continuance; and the record shows he was keenly involved with preparation of his case and thus self-representation would not have delayed the case. Even if his request is deemed timely and thus subject to the trial court's discretion, he asserts it was an abuse of discretion to deny it because his request was sincere and would not have delayed the trial. He points out the only reason he initially requested counsel was because he was being forced to wear restraints. He claims that once he obtained counsel he found counsel's performance to be deficient and concluded he could better represent himself.

      We need not decide whether the *Faretta* request before us on appeal should be evaluated under the timely or untimely standard. Even though Baumer did not request a continuance when he asked to again represent himself, the record supports the trial court's conclusion that Baumer had acted in a manner which obstructed the orderly administration of justice and that if his self-representation status was reinstated such behavior would likely recur. When he was upset about the order that he wear restraints, Baumer defied the court's ruling that he could not revoke his self-representation status by simply refusing to cooperate with the proceedings. He essentially forced the court to appoint counsel, which caused a delay in the commencement of trial. At that time the court expressly advised Baumer that if counsel was appointed he would not be able to reinstate his self-representation status because the request would be viewed as manipulative. After counsel was appointed, Baumer made repeated *Marsden* motions to relieve his counsel, and then, ignoring the court's earlier advisement, asked to represent himself.

      Although Baumer had the right to make arguments and motions as he deemed appropriate, he was required to abide by the court's rulings once they were made. [*See People v. Welch*, 20 Cal.4th 701, 734 (1999).] Baumer's conduct of refusing to cooperate with the proceedings in response to the unfavorable restraints ruling, demanding appointed counsel instead of self-representation, and then forcing the court's hand in this regard again asking for self-representation status, supports a finding that he was engaging in obstructionist tactics. By the time of Baumer's *Faretta* motions, he had already been warned that if he gave up his self-representation status any subsequent request to reinstate it would be viewed as manipulative. The trial court had been interacting with Baumer for several months and was aware of his propensity to engage in manipulative conduct to achieve desired results. It was well within the reasonable exercise of the court's discretion to conclude that if Baumer was again allowed to represent himself he would likely repeat this conduct in the event of future unfavorable rulings causing further delay and obstruction of trial. No error is shown by the trial court's denial of Baumer's Faretta motion.

(Lodgment No. 6 at 11-12.)

///

A defendant has the right to represent himself *pro se* or to be represented by an attorney. *Faretta*, 422 U.S. at 807. In order to successfully invoke the right to self-representation, the defendant's waiver of counsel must be "timely, not for the purposes of delay, unequivocal, and knowing and intelligent." *United States v. Erskine*, 355 F.3d 1161, 1167 (9th Cir. 2004) Even a timely request may be denied if it has been made with an intent to cause delay. *United States v. Kaczynski*, 239 F.3d 1108, 1117-18 (9th Cir. 2001); *see also United States v. Smith*, 780 F.2d 810, 811 (9th Cir. 1986) (stating that a demand of self-representation is timely if made prior to jury selection or before jury is empaneled, unless made for purpose of delay).

In order to determine whether a timely request was made for purpose of delay, a court must examine the events preceding the request to determine if they are consistent with a good faith assertion of the *Faretta* right and whether the defendant could reasonably be expected to have made the motion at an earlier time. *Fritz v. Spalding*, 682 F.2d 782, 784-85 (9th Cir. 1982). "Delay per se is not a sufficient ground for denying a defendant's constitutional right of self-representation." *Id*. at 784. A defendant may not be deprived of the right to proceed *pro se* "absent an affirmative showing of purpose to secure delay." *Id*.

Here, Petitioner claims he made the request because he was dissatisfied with his court-appointed attorney and that it was not intended for purposes of delay. (Petition at 15.) He further notes that he specifically did not ask for a continuance when he made the request. (*Id*.) The trial court denied the request because it found that all the events preceding the request demonstrated that Petitioner's true purpose was to delay. (10 RT at 1641.) The record amply supports the trial court's conclusion that Petitioner offered his motion as a delaying tactic.

After interacting with Petitioner for several months, the trial court found that Petitioner's tactics and techniques have repeatedly shown that his intent is to delay the trial. (*Id*.) The trial court noted that although Petitioner claimed he was not requesting a continuance at the moment, all of his prior actions made it clear that the moment Petitioner felt something was not going his way, he would create a delay tactic such as refusing to do any work. (*Id*. at 1641-42.) Indeed, when the trial court had previously denied Petitioner's request to have counsel appointed, on the grounds that it was made on the eve of trial in violation of a previous court order, Petitioner exhibited obstructive behavior and refused to proceed

*unless counsel was appointed*, essentially forcing the trial court to appoint him counsel. (*See* 8 RT at 1157-81.) Furthermore, the trial court noted the same security measures regarding shackling, which was the reason why Petitioner claimed could not represent himself earlier, were still in effect. (10 RT at 1641.)

In sum, the trial judge did not violate Petitioner right to self-representation because he reasonably concluded that Petitioner's request for self-representation was done with the purpose to secure delay. Accordingly, the state appellate court's ruling on the claim was neither contrary to nor involved an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts. Therefore, this Court recommends Petitioner's claim be **DENIED**.

### D. Request for Evidentiary Hearing

Finally, Petitioner filed a request for an evidentiary hearing.[3] Petitioner indicated in the motion that he wishes to present excerpts from the reporter's transcript of a hearing the trial court held regarding his motion to substitute counsel, in order to show that his request to represent himself was not for purposes of delay, but because he sincerely believed his trial counsel was providing him ineffective assistance of counsel. [Doc. No. 33 at 3-4.]

For the reasons discussed above, the claim upon which the request for an evidentiary hearing is based is without merit. Therefore, the Court recommends Petitioner's request for an evidentiary hearing be **DENIED**. *See Bashor v. Risley*, 730 F.2d 1228, 1233 (9th Cir. 1984) (holding that an evidentiary hearing is not required on issues which can be resolved on the basis of the state court record).

///
///
///
///
///
///

---

[3] In his Request for an Evidentiary Hearing, Petitioner also attempts to raise an ineffective assistance of counsel claim. (Request at 4-6.) However, the Honorable Jeffrey T. Miller previously denied Petitioner's request to amend his petition to add this claim, agreeing with this Court's finding that such a claim would be procedurally barred as well as unmeritorious. [Doc. No. 25 at 10.]

## V.  CONCLUSION

The Court submits this Report and Recommendation to United States District Judge Jeffrey T. Miller under 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the United States District Court for the Southern District of California.  For the reasons outlined above, **IT IS HEREBY RECOMMENDED** that the Court issue an Order:  (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered **DENYING** the Petition and **DENYING** the Request for an Evidentiary Hearing.

**IT IS ORDERED** that no later than **March 14, 2008**, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **10 days after being served with the objections**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

**IT IS SO ORDERED**.

DATED: February 11, 2008

                                            **CATHY ANN BENCIVENGO**
United States Magistrate Judge